# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JONES, HENRY L. and | ) | Case No. 04-04267-TLM |
| JONES, DIANE M., | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| IN RE | ) | |
| | ) | |
| MOTLEY, ROSE | ) | Case No. 04-03116-TLM |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| IN RE | ) | |
| | ) | |
| RISNER, GARY and | ) | Case No. 04-02310-TLM |
| RISNER, MARIA, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| IN RE | ) | |
| | ) | |
| LANNING, SHARON LEE | ) | Case No. 04-03215-TLM |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

MEMORANDUM OF DECISION - 1

```
                                )
IN RE                           )
                                )
SIGMOND, SERGIO V. and          )          Case No. 04-01326-TLM
SIGMOND, ELVIRA Z.,             )
                                )
              Debtors.          )
                                )
_____ )
```

## MEMORANDUM OF DECISION

**BACKGROUND**

Attorney Kelly Beeman ("Counsel") represents the Debtors in the above captioned cases and, in each, he filed motions for sanctions against creditors who had allegedly violated § 362(a)'s automatic stay.[1]  Many of those motions were settled for various and, usually, undisclosed amounts.

The Court noted this trend in Counsel's practice and reviewed the files to determine if Counsel had properly informed the Court of any new compensation agreements with his clients or any compensation received due to these settlements. After reviewing the records, the Court issued Orders to Show Cause (the "Orders") to Counsel regarding his disclosures and fees, and a hearing was held on May 10, 2005.  The matter was taken under advisement at the conclusion of that hearing.  The following constitutes the Court's findings of fact and conclusions of

---

[1] For ease of reference, the Court will identify pleadings in these cases by the last name of the debtors and applicable docket numbers, *e.g.*, *Jones*, Doc. No. 8 or *Motley*, Doc. No. 19.

MEMORANDUM OF DECISION - 2

law and resolves the Court's Orders.

**FACTS**

### A. *In re Jones*, Case No. 04-04267-TLM

On January 6, 2005, Counsel filed a motion for sanctions against creditor Bank of America for violation of the automatic stay. *Jones*, Doc. No. 8. Counsel then amended the motion on February 17, 2005, alleging further collection efforts on the part of the creditor. *Jones*, Doc. No. 18.

Bank of America's counsel later submitted a stipulated judgment to resolve the motion. That judgment satisfied Debtors' obligation to Bank of America under the loan contract, released Bank of America's lien on Debtors' automobile and awarded $1,000.00 to Debtors. *Jones*, Doc. No. 25. A satisfaction of judgment was then provided to the Court. *Jones*, Doc. No. 30.

Counsel did not file a supplemental Rule 2016(b) statement. Counsel submitted a response to the Court's Orders, stating he received $1,000.00 in fees from the settlement of the motion for sanctions and he included an itemization of his time.[2] Counsel's itemization asserts 9.05 hours were spent dealing with this motion at Counsel's claimed hourly rate of $175.00, for a total possible cost of $1,583.75.

### B. *In re Motley*, Case No. 04-03116-TLM

---

[2] The adequacy of the itemizations Counsel provided in each case will be discussed further below.

MEMORANDUM OF DECISION - 3

### 1.  RMCB

On November 12, 2004, Counsel filed a motion for sanctions against creditor RMCB. *Motley*, Doc. No. 19.  On December 8, 2004, Counsel withdrew the motion based on a settlement, but he did not provide any information regarding the structure or details of the settlement.

### 2.  Scenic Falls Credit Union

On October 19, 2004, Counsel filed a motion for sanctions against creditor Scenic Falls Credit Union. *Motley*, Doc. No. 12.  On November 1, 2004, he withdrew the motion based on a settlement, but he did not provide any specific information regarding the structure of the settlement or the allocation of any settlement amounts to him as fees. *Motley*, Doc. No. 17.

### 3.  Nationwide Credit

On October 19, 2004, Counsel filed a motion for sanctions against creditor Nationwide Credit. *Motley*, Doc. No. 9.  On October 26, 2004, Counsel withdrew the motion, again based on a nondescript settlement. *Motley*, Doc. No. 15.

Counsel filed a disclosure of attorney compensation under Rule 2016(b) on November 30, 2004, reflecting a payment from "creditor(s)" of $506.25 regarding services rendered on motion(s) for sanctions, and he filed another disclosure on January 24, 2005, reflecting a payment from Debtor of $93.75. *Motley*, Doc. Nos. 25, 29.

MEMORANDUM OF DECISION - 4

The November 30 disclosure noted that Debtor received "25% of all proceeds" from the prosecution of the motions for sanctions but does not identify any new fee agreement, nor does it state the actual amounts he received based on the settlement of each motion or identify the particular creditors providing those funds. While not expressly set forth in any 2016(b) disclosure, Counsel confirmed at hearing he retained 75% of settlement proceeds pursuant to a verbal agreement reached with Ms. Motley prior to initiating each motion.[3]

The 2016(b) disclosure of January 24 affirmatively represented that the source of the funds received was Debtor; it did not mention payment coming from any creditor. *Motley*, Doc. No. 29. At hearing, Counsel clarified that Debtor did not pay the $93.75, but the funds instead came from the proceeds of settlement with creditor RMCB, again based on a 75% contingency fee agreement reached with his client.

Counsel filed a response to the Court's Orders, stating he received $600.00 from settlement of the above identified motions. *Motley*, Doc. No. 35. He provided an itemization reflecting 6.5 hours spent on the above motions, which at his claimed hourly rate of $175.00 equates to $1,225.00 in possible attorney's

---

[3] At hearing, Counsel referred to the agreements with his clients as "fee splitting" agreements. They are in fact contingency fee agreements under which Counsel would retain 75% of any proceeds from settlements reached on motions for sanctions based on asserted stay violations. As discussed below, contingency fee agreements that are not in writing and signed by the client violate the Idaho Rules of Professional Conduct.

MEMORANDUM OF DECISION - 5

fees.

### C. *In re Risner*, Case No. 04-02310-TLM[4]

#### 1. Saltzer Medical Group

On September 14, 2004, Counsel filed a motion for sanctions against creditor Saltzer Medical. *Risner*, Doc. No. 7. Counsel then amended the motion for sanctions on September 21, 2004. *Risner*, Doc. No. 19. On October 7, 2004, Counsel withdrew the motion based on a settlement for an undisclosed amount. *Risner*, Doc. No. 28.

#### 2. Transworld Systems

Also on September 14, 2004, Counsel filed a motion for sanctions against creditor Transworld. *Risner*, Doc. No. 10. He withdrew that motion on October 25, 2004 based on a settlement, but did not disclose any specific facts regarding the settlement or his fees.

#### 3. Shell Oil

On September 14, 2004, Counsel filed yet another motion for sanctions, this time against creditor Shell Oil. *Risner*, Doc. No. 16. He withdrew that motion on October 4, 2004 based on a settlement, but he did not provide any

---

[4] In *Risner*, Counsel filed multiple motions for sanctions against a number of creditors. The court addressed one such motion in *In re Risner*, 04.4 I.B.C.R. 172 (Bankr. D. Idaho 2004). The Court's Orders presently under consideration focused only on those § 362(h) motions that were withdrawn based on settlements, thus only those motions are discussed in this Memorandum.

MEMORANDUM OF DECISION - 6

details regarding the settlement or his fees.

On November 30, 2004, Counsel filed a disclosure of attorney compensation which revealed Counsel was paid $800.00 to prosecute and settle the motions for sanctions. *Risner*, Doc. No. 39. Counsel did not specify which creditors provided the funds, how those fees were calculated or if there was any sort of agreement with Counsel's clients regarding the distribution of those funds. The disclosure did state that these Debtors' received 25% of the proceeds. At hearing, Counsel introduced a letter from his clients dated August 27, 2004 agreeing to a 75% contingency fee for his work on the motions for sanctions. *See* Ex. 1.

Counsel filed a response to the Court's Orders, stating he received $900.00 from settlement of the above identified motions. *Risner*, Doc. No. 50. He provided an itemization reflecting 8.5 hours spent on several motions, some not identified above, which at his claimed hourly rate of $175.00 equates to $1,487.50 in possible attorney's fees.

### D. *In re Lanning*, Case No. 04-3215-TLM

On November 30, 2004, Counsel filed a motion for sanctions against creditor Associated Recovery Systems. *Lanning*, Doc. No. 7. On December 10, 2004, he withdrew that motion based on a settlement, but he did not disclose the nature of the settlement or any payment of his fees. *Lanning*, Doc. No. 10. Nor

MEMORANDUM OF DECISION - 7

did Counsel file a supplemental 2016(b) disclosure reflecting payment of fees from creditor Associated Recovery Systems in connection with the settlement of the motion for sanctions.  The only supplemental 2016(b) statements filed in the case reflect full payment of Counsel's original $750.00 fee from Debtor; there is no mention of any payment by a creditor.  *Lanning*, Doc. Nos. 2, 11, 14.

Counsel filed a response to the Court's Orders, stating he received $700.00 from a $1,000.00 settlement of the above identified motion.  *Lanning*, Doc. No. 18.  He provided an itemization reflecting 4.5 hours spent settling the above identified motion, which at his claimed hourly rate of $175.00 equates to $787.50 in possible attorney's fees.

### E.  *In re Sigmond*, Case No. 04-01326-TLM

On July 21, 2004, Counsel filed a motion for sanctions against Shell Processing Center.  *Sigmond*, Doc. No. 9.  On August 25, 2004, Counsel filed a notice of settlement without providing any details regarding that settlement or his fees.  *Sigmond*, Doc. No. 17.  On April 21, 2005, the same day this Court issued its Orders, Counsel filed a supplemental 2016(b) statement.  *Sigmond*, Doc. No. 20.  The supplemental 2016(b) statement reflects a $750.00 fee paid by creditor Citi Group, but it provides no explanation of how, or whether, the payment from Citi Group is connected with the settlement of the motion against creditor Shell Processing Center.

MEMORANDUM OF DECISION - 8

To further confound this issue, Counsel filed a response to the Court's Orders, stating he received $1,500.00 from creditors Shell Processing Center and Citi Group. *Sigmond*, Doc. No. 24. He provided an itemization reflecting 2.5 hours spent settling motions against Citi and Shell, which at his claimed hourly rate of $175.00 equates to $437.50 in possible attorney's fees. At the May 10 hearing, Counsel clarified that no motion was filed against Citi Group in this case and no settlement was received, and that he received $750.00 from a $1,000.00 settlement with Shell only.

**DISCUSSION AND DISPOSITION**

It is undoubtedly appropriate for a debtor's attorney to act to protect his or her client from collection activities that violate the automatic stay. In many ways, Counsel's apparent commitment to this goal is laudable. But Counsel's execution is far from perfect.

This Court previously addressed Counsel's zeal in prosecuting such matters, questioned whether Counsel was driven by his own interests rather than his clients' interests, and identified as problematic Counsel's approach of filing § 362(h) motions prior to making any attempt to resolve the stay violations without litigation. *See Risner*, 04.4 I.B.C.R. at 172-176. While some of the conduct in these five cases raises similar concerns, what the Court said in *Risner* need not be repeated here. It is simply reaffirmed.

MEMORANDUM OF DECISION - 9

But Counsel's conduct raises additional issues that require analysis. These issues include lack of compliance with the disclosure obligations of § 329(a) and 2016(b), the reasonableness under § 329(b) of Counsel's collected fees, and related matters.

The Court will first address Counsel's submissions to the Court in attempted justification of the reasonableness of his fees related to the § 362(h) matters. Second, the Court will consider Counsel's use of contingency fees in connection with his motions for sanctions for stay violations. Third, the Court will determine what reasonable compensation is on the § 362(h) motions and settlements in the several cases given the record presented. Fourth and finally, the Court will consider the consequences of Counsel's failure to abide by and comply with Rule 2016(b)'s disclosure requirements.

### A. Itemization of time and settlements

The Courts' Orders required Counsel to provide a "written itemization of all services rendered to debtors and all costs incurred in each of the above referenced cases." Orders at 3. The Court specifically ordered that the itemizations include "a detailed description of each individual item of service rendered, the name of the individual who rendered each service, the date such service was rendered, and the time expended in rendering such service." *Id.* at 3. In addition, the Court ordered Counsel to include within the itemization "an accounting of all billings to and all payments received from debtors and/or

MEMORANDUM OF DECISION - 10

creditors." *Id.* at 4.

Counsel's submissions do not comply with the Court's Orders and fail to provide the necessary information to allow the Court to determine if Counsel's compensation represents reasonable compensation for actual, necessary services rendered in the case.[5]

A starting point for an evaluation of the reasonableness of Counsel's fees is an explanation that discloses what was done, when it was done, by whom it was done, and how long it took. *See* §§ 329(b), 330(a)(1)(A), 330(a)(3)(A). In this regard, Counsel's submissions suffer from the following inadequacies.

### 1. Incomplete descriptions and lumped services

In providing his itemization of time spent in each of the above cases, Counsel "lumped" entries, *i.e.*, used a single entry listing (or, more accurately, intending to list) several different and distinct services with an aggregate time. This approach makes determining actual time spent on any individual task impossible.

For example, Counsel explained at hearing that his uniform 1.5 hour entry

---

[5] The Orders required explanation of "all" services. Counsel's itemizations address only services related to some, but not all, of the § 362(h) motions filed in the above referenced cases. This handicaps the Court in evaluating, for example, whether other amounts paid Counsel (his "initial fee") were sufficient to cover the § 362(h) issues as well as other bankruptcy services. The failure to comply with the directive of the Orders supports a summary denial of the suggested compensation. The Court has elected, however, to address the merits notwithstanding Counsel's lack of completeness in his itemizations. Counsel and his clients appear to treat the § 362(h) issues as "supplemental" services not covered by Counsel's initial fee. The Court today does so as well without ruling on the propriety of this "unbundled" approach to services so integrally connected with bankruptcy.

MEMORANDUM OF DECISION - 11

reading "*Filed* Motion for Sanctions, Affidavit and Notice of Hearing against [creditor]" included the time it took him to "dictate, review, prepare and file" the motion, affidavit and notice of hearing. *See*, *e.g.*, *Risner*, Doc. No. 50 at 2 (emphasis added).[6]  In another case, Counsel explained his .5 hour entry for "2016(b) for [creditor]" was meant to include reviewing the file and preparing, dictating, reviewing and filing a 2016(b) statement. *See Motley*, Doc. No. 35 at 2. Counsel explained that another .5 hour entry for "faxing" an acceptance to a creditor's settlement offer was comprised of time spent to dictate, review, and oversee the faxing of the acceptance. *See Sigmond*, Doc. No. 24 at 2.

These are but a few examples plucked from a hearing replete with attempted explanations regarding Counsel's entries.  Such lumping. express of tacit, is not appropriate.  This Court has repeatedly identified the lumping of time entries as improper.  *See, e.g., In re Haskew*, 01.2 I.B.C.R. 62, 65 (Bankr. D. Idaho 2001) ("Lumping compensable services together with noncompensable services makes it difficult if not impossible to determine the amount of time actually spent on the compensable services.  In such situations, the Court may deny compensation requested in the lumped entry."); *In re Jordan*, 00.1 I.B.C.R. 46, 49 (Bankr. D. Idaho 2000) (citing *Pfeiffer v. Couch (In re Xebec)*, 147 B.R. 518, 525 (9th Cir. BAP 1992)).  Lumping impedes reasoned analysis.  Here, Counsel's

---

[6]  *See also Jones*, Doc. No. 35 at 2 (1.5 hour charge reading "*faxed* Exhibits A and B of Amended Motion for Sanctions to B of A attorney, Trustee, US Trustee" (emphasis added)).

MEMORANDUM OF DECISION - 12

explanations provide little guidance to the Court as to how much time was spent on each task. This matters because some of the tasks he identified in his defense of the entries are clearly clerical in nature, or would appear to not require much professional time to complete.

### 2. Industry standards

Counsel also explained at hearing that he uses "industry standard" minimums when entering his billable hours. For example, according to Counsel, a telephone call is *always* billed at two tenths of an hour regardless of whether the call took two minutes or twelve minutes to complete. *See*, *e.g.*, *Sigmond*, Doc. No. 24 at 2. Whether the legal profession actually has any such minimum "industry standard" billing increments and whether such a billing practice is ethical are topics the Court can leave for another day.[7] But the Court cannot allow attorneys to believe such "minimums" are acceptable when accounting for *actual* time spent on a bankruptcy case.

The Code provides for payment to professionals for "actual, necessary services rendered." *See* § 330(a)(1)(A); § 329(b) (referring to "services rendered or to be rendered" in the case). This Court has previously instructed Counsel he needs to account for the actual time spent representing clients. *See Risner*, 04.4 I.B.C.R. at 175 n.16 (cautioning Counsel that "[t]he *actual* time spent must be

---

[7] No proof of an "industry standard" was provided. It was simply something Counsel asserted.

MEMORANDUM OF DECISION - 13

established, through competent evidence in each case and *viz* each creditor alleged

to have violated § 362(a), and that time and the fees charged must be shown to be

reasonable.").

Moreover, this Court has analyzed billing increments and cautioned

attorneys to use tenths of an hour; nowhere has the Court suggested or approved a

standard two tenths of an hour minimum billing increment. *See In re Voechting,*

03.4 I.B.C.R. 237, 238 (Bankr. D. Idaho 2003); *In re Combe Farms, Inc.,* 01.1

I.B.C.R. 7, 10 (Bankr. D. Idaho 2001); *see also In re Pettibone Corp*, 74 B.R. 293,

302 (Bankr. N.D. Ill. 1987) (stating the actual time spent on any task must be

recorded and "short telephone conversations should not routinely be recorded as

.25 or .2 hours") (citing *In re Four-Star Terminals, Inc.*, 42 B.R. 419, 426-27 n.1

(Bankr. D. Alaska 1984)).  As Counsel admitting using minimum billing

increments as opposed to actual time spent, the Court cannot confidently rely on

the itemization Counsel provided.

### 3.  Hourly rate and time spent

Counsel's claimed hourly rate is $175.00 per hour in each case.[8]  In past

dealings with Counsel on § 362(h) issues, the Court has expressed reservations

over Counsel's high hourly rate given the form pleadings used and the services for

---

[8] In Counsel's submissions, he represented to this Court that his standard fee is $175.00, but on prior occasions within the *Risner* case, Counsel represented to the Court that his hourly fee was $150.00.  *See Risner*, 04.4 I.B.C.R. at 174 n.13.  In addition, a prior affidavit filed by Ms. Lanning states that Counsel had informed her that his hourly rate was $150.00 per hour.  *See Lanning*, Doc. No. 8 at 2.

MEMORANDUM OF DECISION - 14

which he is charging.  Counsel denies that his pleadings are "form" pleadings,
contending each pleading is dictated and drafted based on the facts and
circumstances of the individual case and creditor.  However, as this Court has
already noted in *Risner*, 04.4 I.B.C.R. at 174, Counsel's motions "are essentially
boiler plate forms, requiring little time to prepare."  His motions use the same
language and the same format, and vary only in reference to the creditor.[9]

Moreover, even if Counsel dictates the entire pleading from scratch, which
the Court highly doubts, if the pleading emerges with the same format and the
same wording on each and every occasion, he should cease preparing them this
way and instead use a form.  His failure to use such a form, and charge an
appropriate and much reduced rate for the professional service actually required to
adapt that form to the facts of the case, is inefficient.  Inefficient lawyers should
not charge or be compensated for unnecessary time expended, especially at a
$175.00 per hour rate.

In addition to these problems regarding Counsel's hourly rate and time
spent, several of Counsel's entries, on their face, are clerical in nature and must be
absorbed into his firm's overhead rather than billed to his clients.  For example,
faxing[10] and filing[11] are not compensable tasks.  *See Missouri v. Jenkins,* 491 U.S.

---

[9]  At times, the creditor's name on or in the form is not even changed.  *See id.*

[10]  While Counsel explained that entries described only as "faxing" involved more than
just sending a fax, his explanation at hearing still included the process of faxing as one of the
(continued...)

MEMORANDUM OF DECISION - 15

274, 288 n.10 (1989) (stating that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); *In re Castorena*, 270 B.R. 504, 515-16, 01.4 I.B.C.R. 153, 157-58 (Bankr. D. Idaho 2001) (stating that "Lawyers, or paralegals for that matter, may not charge professional rates for clerical functions") (citing *In re Haskew*, 01.2 I.B.C.R. at 65; *Jordan*, 00.1 I.B.C.R. at 48; *In re Bank of New England Corp.*, 134 B.R. 450, 455 (Bankr. D. Mass. 1991), *aff'd*, 142 B.R. 584 (D. Mass. 1992) ("[I]f the service performed by a paraprofessional consists of typing, data entry, checking court dockets or court dates, manually assembling, collating, marking, processing, photocopying or mailing documents, the task is clerical in nature and not compensable.")).

Other of Counsel's entries state times that are unreasonably lengthy given the nature of the services provided. For example, billing 1.0 hours of attorney time to write a client a congratulatory letter is unreasonable and is not necessary. *See Jones*, Doc. No. 35 at 3. In addition, .5 hours to review a stipulated order entered by the Court, for which Counsel had already billed .75 hours to review when it was received from opposing counsel, is unreasonable. *Id.*

### 4. Inaccuracies

---

[10](...continued)
many tasks that went into the entries and for which he wanted fees paid.

[11]  At hearing, Counsel stated that he charged attorney time for filing documents as he is ultimately responsible for filings made in the case. He then corrected that statement and represented to the Court that the charges listed in his itemization do not include charges for filing at attorney time and rates.

MEMORANDUM OF DECISION - 16

Beyond the problems addressed above, Counsel's submissions suffer from inaccuracies, many of which were identified at hearing.

For example, Counsel submitted itemized time entries in *Sigmond* for "filing" a disclosure of compensation regarding creditor "Citi" when Mr. Sigmond did not have any dispute with Citi. *Sigmond*, Doc. No. 24 at 2. In addition, Counsel represented that Mr. Sigmond received $1,000.00 in settlement from Citi, but again, there was no dispute with that creditor and no such settlement was received. *Id.*

In *Motley*, Counsel itemized time to prepare two 2016(b) disclosures regarding creditors SFCU and NCI but, in reality, drafted a 2016(b) statement regarding creditor RMCB and another regarding both SFCU and NCI. *Motley*, Doc. No. 35 at 2.

Counsel's itemization in *Risner* fails to disclose the amount of settlement of a motion for sanctions against creditor Saltzer Medical Group. *Risner*, Doc. No. 50 at 2.

In *Jones,* Counsel listed .5 hours for "Amended 2016(b)," presumably to draft a supplemental attorney disclosure, yet no amended 2016(b) statement was filed in that case. *Jones*, Doc. No. 35 at 3.

That itemizations prepared and submitted by Counsel in defense of his fees and conduct, and in response to express Court Orders, would contain so many

MEMORANDUM OF DECISION - 17

errors is certainly disheartening.

Counsel's itemizations suffer from omissions as well as inaccuracies. Counsel failed to itemize time spent that was established through testimony at the hearing. For example, Counsel's clients, with the exception of the Risners who were not present at the May 10 hearing, testified that they phoned Counsel's office to discuss the creditor contacts. While it is unclear that all of the clients conversed with Counsel, it is clear that at least a few of them did. Other clients testified that they met with Counsel in person regarding the contacts. For example, Ms. Lanning testified that she spent approximately an hour with counsel, in addition to their phone conversations, discussing the stay violations and possible remedies. Such time is not listed in Counsel's itemization. Counsel also failed to include any time to draft the motion for sanctions against creditor Shell Processing Center in *Sigmond*, yet such a motion was filed.

In one sense, these omissions create no § 330 problem; Counsel is free to chose not to charge for services actually rendered. However, the context and the record in these matters does not support the idea that Counsel consciously elected to omit charges. Rather, the omissions bespeak carelessness in record keeping and cast further doubt on the accuracy and reliability of any of Counsel's itemizations.

### B. Contingency fee

Counsel represents to the Court that he entered into a 75% contingency fee

MEMORANDUM OF DECISION - 18

agreement with his clients regarding stay violations and believes the fees
generated under such agreements are reasonable compensation for his services on
such matters.[12]  Counsel would have the Court validate his contingency fees and
the reasonableness of the sums he retained: $1,000.00 in *Jones*, $600.00 in *Motley*,
$900.00 in *Risner*, $700.00 in *Lanning*, and $750.00 in *Sigmond*.[13]

Use of a contingency fee by a debtor and his or her attorney is not *per se*
unreasonable.  *See Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465,
1470 (9th Cir. 1983) (noting that "nothing inherent in a contingency fee agreement
between a debtor and his attorney prevents it from being enforceable in
bankruptcy.").  However, neither is a contingency fee *per se* reasonable.  Instead,
the fee paid to a debtor's attorney, whether through a contingency fee or a hourly
fee, must reflect the reasonable value for the attorney's services.  *Id.* at 1470-71;
*see also* I.R.P.C. 1.5 cmt. 3; § 329(b).  If the compensation exceeds the reasonable
value of the services rendered, the Court may cancel the parties' agreement and
order any excess, unreasonable payment disgorged.  *See* § 329(b); *In re
Soderberg*, 99.4 I.B.C.R. 152, 153 (Bankr. D. Idaho 1999).

If attorneys decide to use contingency fees in stay violation proceedings, as

---

[12]  Given this representation, the Court is concerned that Counsel has not provided, with
the exception of the *Risner* case, any documentation regarding these agreements.  *See* Ex. 1.  The
Idaho Rules of Professional Conduct require all contingency fee agreements to be in writing, be
signed by the client and state the method by which the fee is to be determined.  *See* I.R.P.C.
1.5(c).

[13]  *See* Ex. A attached to this Decision at column A.

MEMORANDUM OF DECISION - 19

Counsel did in this case, they should obviously be aware of the Court's previously voiced concern over needless § 362(h) litigation.  *See Risner*, 04.4 I.B.C.R. at 175 (expressing concern over a "cottage industry of precipitous section 362(h) litigation.") (quoting *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 11-12 (9th Cir. BAP 2002)); *see also In re Robinson*, 228 B.R. 75, 85-86 (Bankr. E.D.N.Y. 1998) (expressing dismay at the notion of § 362 being used to generate legal fees for a debtor's attorney).  Use of contingency fees might well be viewed as a factor in analyzing whether such litigation was necessary or improvident, or motivated more by the attorney's self interest than by the needs of the debtors.

In order to address those concerns, an attorney must identify factors that favor the use of a contingency fee agreement in the § 362(h) proceedings.[14] Factors might include the risk involved in pursuing the particular cause.  Whether the violation is clear, or more arguable or tenuous, is relevant.  Some motions might be hotly contested, requiring significant investments in time or resources. Relevant, too, is the question of damages suffered.  There is the possibility that the Court might deny the motions without any compensation or grant a minimal damage award and minimal fee award.  On the other hand, significant potential damages may be implicated.

---

[14]  Attorneys must also clearly explain whether such § 362(h) services are included within the fees previously paid in the case and, if not, other inquires over the reasonableness of those prior payments may be warranted.

MEMORANDUM OF DECISION - 20

In the present cases, Counsel has not adequately identified factors that would allow the Court to validate the 75% contingency fee as reasonable on each of the motions.  The situations in these Debtors' cases are not identical or fungible.  In some, a creditor's erroneous mailing of a bill or initiation of a collection call is all that occurred.  In others, creditors became persistent, repeatedly violating the automatic stay, ignoring Debtors' statements that they had filed for bankruptcy relief or their requests that the creditors contact Counsel.  The size and sophistication of the creditors involved also varies.

The use of the 75% fee was not shown to be calculated in reference to the specific problems faced in each case or with each creditor.  In fact, the use of such a high percentage across the board, in light of the number and size of settlements obtained, give support to the idea that the fee agreement itself promoted litigation and put Counsel's economic interests ahead of his clients' legal interests.

## C. Reasonable time and hourly rate

In the absence of adequate support for Counsel's proposed 75% contingency fees in these cases, the Court must resort to a comparison between the amount of compensation retained by Counsel from the settlements and a "loadstar fee" based on a reasonable hourly rate and the actual number of hours reasonably expended.  *See Yermakov*, 718 F.2d at 1471; *Jordan*, 00.1 I.B.C.R. at 48.[15]

---

[15]  A loadstar fee may be enhanced on an adequate showing by counsel.  *See Burgess v.*
(continued...)

MEMORANDUM OF DECISION - 21

Given the testimony at hearing, it is clear that Counsel pursued these several motions with the actual knowledge of his clients and in their interests. Many of the motions appear to be well taken, and they address apparent violations of the automatic stay, some evidently quite serious. However, some of the motions appear to address violations with little real impact on debtors or any actual damages.

Counsel should be commended for pursuing and vindicating his clients' rights in situations evidencing a creditor's objectively bad conduct. But also Counsel must be warned, and he has been warned in the past, that motions with thin or unproven merit, especially if aimed primarily if not exclusively at generating fees, have little likelihood of being blessed by this Court.

Due to the range of factual bases on which these motions were brought, and given Counsel's problematic itemizations, the analysis of Counsel's reasonable

---

(...continued)
*Klenske (In re Manoa Fin. Co.),* 853 F.2d 687, 691-92 (9th Cir. 1988) (requiring an attorney to demonstrate why an upward adjustment is necessary to make the loadstar award commensurate with comparable nonbankruptcy services). To determine the appropriate loadstar figure and if the loadstar fee may be enhanced, courts often review: (1) the time and labor involved; (2) the preclusion of other employment by the attorney due to acceptance of the case; (3) the customary fee; (4) whether the fee is fixed or contingent; (5) time limitations imposed by the client or the circumstances; (6) the amount involved; (7) the "undesireability" of the case; (8) the nature and length of the professional relationship with the client; and (9) awards in similar cases. *In re One City Ctr. Assocs.,* 111 B.R. 872, 876 (Bankr. E.D. Cal. 1990) (citing *Kerr v. Screen Extras Guild,* 526 F.2d 67 (9th cir. 1975)). Courts may also consider the risk of not prevailing, the risk of nonpayment, and the difficulty of finding counsel to litigate the case in determining if enhancing a reasonable fee is appropriate. *First Nat'l Bank of Chicago v. Comm. of Creditors Holding Unsecured Claims (In re Powerine Oil Co.),* 71 B.R. 767, 773 (9th Cir. BAP 1986); *One City Centre,* 111 B.R. at 877. Here, Counsel has not demonstrated that any upward adjustment should be made to a loadstar fee.

MEMORANDUM OF DECISION - 22

fees is difficult. Nonetheless, the Court has reviewed all the evidence, including

the records in these cases, and is now familiar with the facts and events that led to

the § 362(h) allegations and the respective settlements.

Counsel did spend time pursuing these matters, and he did resolve the

disputes in his clients' favor. Based on the Court's experience and the facts of

these cases, the Court concludes a reasonable hourly rate for Counsel's services in

these regards is $125.00 per hour.

The Court further concludes that Counsel's reasonable time spent on these

motions and settlements, incorporating Counsel's itemizations of alleged actual

time, and also incorporating all the findings and comments above, is as follows:

*Jones*: 7.0 hours @ $125.00/hr. = $875.00;

*Motley*: 4.0 hours @ $125.00/hr. = $500.00;

*Risner*: 3.2 hours @ $125.00/hr. = $400.00;

*Lanning*: 2.8 hours @ $125.00/hr. = $350.00; and

*Sigmond*: 2.0 hours @ $125.00/hr. = $250.00.[16]

### C. Timely and Adequate Disclosures

The Court has thus arrived at the reasonable compensation for Counsel in

regard to his § 362(h) services. But this is not the amount Counsel will be allowed

to retain.

---

[16] *See also* attached Ex. A at column C.

MEMORANDUM OF DECISION - 23

Under § 329(a) and Rule 2016(b), a debtor's attorney is required to execute and file a supplemental statement concerning any payment received or any compensation agreement reached that was not previously disclosed, and the attorney must do so within fifteen days of receiving payment or making a new agreement. Counsel's lack of disclosure regarding his compensation must be addressed.

Counsel's initial Rule 2016(b) disclosures indicated that he agreed to accept $750.00[17] for representing Debtors in these case, that Debtors paid that fee prior to the bankruptcy petition being filed, and that he was owed nothing more.[18] This initial statement also asserted that Counsel's representation was limited to prepetition counseling, preparing and filing the necessary bankruptcy papers, and representing Debtors at the first meeting of creditors.

Counsel stated at the May 10 hearing that his initial fee agreements do not and were not intended to cover representation of his clients in the event a creditor violated the automatic stay.[19] Instead, if a stay violation occurs, Counsel's clients

---

[17] Counsel's fee is $750.00 in all cases except *Sigmond,* in which he agreed to represent Debtors for $650.00. *See Jones*, Doc. No. 2; *Motley,* Doc. No. 2; *Risner*, Doc. No. 2; *Lanning*, Doc. Nos. 2, 11, and 14; *Sigmond*, Doc. No. 2.

[18] Again, there is an exception to this general statement. It appears that the Debtor in *Lanning*, paid her $750.00 fee over time. *See Lanning*, Doc. Nos. 2, 11, 14.

[19] There are two problems with this. The first is the propriety of excluding legal services so fundamental to the bankruptcy process as ensuring that debtors receive the benefit of the automatic stay. *Cf. Castorena*, 270 B.R. at 530. The second is that it was not clear that Counsel's clients understood this limitation. Ms. Motley testified that the limited representation
(continued...)

MEMORANDUM OF DECISION - 24

face three options:  (1) agree to a 75% contingency fee for Counsel's pursuit of relief regarding the violation,[20] (2) pay Counsel's hourly fee of $175.00, or (3) cope on their own with a creditor's illegal collection efforts with no assistance from their retained and previously paid bankruptcy attorney.

By and large, Debtors in the above captioned cases testified that they approved the contingency fee agreements with Counsel after discussion with him and prior to his filing any motions on their behalf.[21]  Debtors indicated they were

---

[19](...continued)
and exclusion of stay violations and the possibility of additional fees to redress such violations were not discussed when she entered into the first agreement.  She said that it was only after she received creditor demands and contacted Counsel that they discussed Counsel's demand for additional compensation and his proposed contingency fee.  The second problem is obviously related to the first: exclusions from the scope of representation without additional payment of fees, especially for something as core to the bankruptcy process as enforcing the automatic stay, must be adequately explained to and understood by the client.  *Id.* at 525-31.

[20]  Counsel advised the Court that at hearing he developed a scaled contingency fee agreement to be used in future cases, basing Counsel's fee on the amount of settlement, *i.e.* 75% on any settlement up to $1,000.00, 50% on any settlement between $1,001 and $5,000.00 and 25% on any settlements over $5,000.00.  *See* Ex. 2.  (Counsel submitted that this contingency fee approach would address only § 362(h) *settlements* and, if a motion for sanctions did not settle, Counsel would accept whatever hourly-based fee was awarded by the Court after hearing.)  The merits or defects in Counsel's suggested, modified approach are not before the Court and no opinion is expressed on such an approach.

[21]  As in *Risner*, 04.4 I.B.C.R. at 175, Counsel went straight to drafting and filing the § 362(h) motions and did not attempt to resolve the stay violations in an informal and potentially less expensive fashion.

MEMORANDUM OF DECISION - 25

content with the new agreement[22] and with the results achieved.[23]

It is thus clear that Counsel struck new fee agreements with his clients concerning prosecution and settlement of the stay violation motions. But it is equally clear from the record that Counsel did not timely or adequately file a supplemental disclosure statement based on those new agreements as required by Rule 2016(b).

In *Jones*, the timing of any new agreement with Counsel's clients is unclear. Mr. Jones testified that there was a lack of communication with Counsel, and he was unaware of any fee agreement with Counsel until the settlement was reached and he was informed by Counsel that the $1,000.00 monetary component to the settlement was to compensate Counsel. Given the lack of understanding between Counsel and his client, maybe it is not surprising that no supplemental 2016(b) disclosure was filed to reflect a new "agreement" regarding Counsel's compensation. However, once Counsel received the $1,000.00 fee and it was understood (at least by Counsel) that he would keep the same, it was incumbent

---

[22] Their "consent" to the contingency fee agreement appears driven less by its inherent fairness and more by Debtors' lack of options. Debtors could little afford Counsel's high hourly fee, but they wanted the dunning stopped. Given a Hobson's choice, they elected the contingency fee even though it was tilted decidedly toward Counsel.

[23] Again, an exception exists. Mr. Jones expressed a lack of understanding concerning Counsel's fees and frustration at being left "in the dark." *See, e.g.*, *Jones*, Doc. No. 38. However, Mr. Jones informed the Court at hearing that Counsel earned the $1,000.00 fee and that it was fair for him to keep that sum, though he was still disappointed with the lack of communication.

MEMORANDUM OF DECISION - 26

upon Counsel to file a supplemental disclosure of attorney compensation within 15 days of that payment.[24]  No such disclosure was filed.

In *Motley*, Ms. Motley testified that she contacted Counsel regarding several creditors' collection efforts and that at that time she agreed to a 75% contingency fee.  As such an agreement was made prior to any motions being drafted or filed, the agreement must have been entered into prior to October 19, 2004.  Yet no supplemental disclosure was filed identifying a new fee agreement between Ms. Motley and Counsel within 15 days of that agreement.

The *Motley* motions were withdrawn on October 26, 2004, November 1, 2004 and December 8, 2004 based on settlements.  A supplemental disclosure was required within fifteen days of Counsel receiving those settlement proceeds.  Ms. Motley testified that she received the agreed upon 25% of the three settlements in the case, amounting to $200.00.  That settlements were reached and the motions withdrawn on these dates is not a precise indication of when payment was received, however, using these withdrawal dates as guidelines, it is clear that while supplemental disclosures were filed in this case, they were untimely.  *See Motley*, Doc. Nos. 25, 29.

The Court also finds the supplemental disclosures inadequate as they failed

_____

[24] Counsel did not timely file supplemental disclosures based upon the several *payments* received.  The Rule requires the supplement "within 15 days after any *payment or agreement* not previously disclosed."  Fed. R. Bankr. P. 2016(b) (emphasis added).

MEMORANDUM OF DECISION - 27

to identify with specificity the source of compensation. *See Motley*, Doc. No. 25 (merely identifying "creditors" as the source of compensation but failing to identify which creditors or what amount was attributable to each creditor) and Doc. No. 29 (incorrectly identifying debtor as the source of compensation).

In *Risner*, Counsel provided the Court with an August 27, 2004 letter documenting a 75% contingency fee agreement with Counsel. *See* Ex. 1. No supplemental disclosure of attorney compensation was filed with 15 days of that agreement.

In addition, the motions filed in *Risner* were withdrawn by the end of October, 2004 based on settlements with the respective creditors, and Counsel represented that the Risners received 25% of those proceeds and he received his 75% fee. However, a supplemental disclosure of attorney compensation was not filed until November 30, 2004. Even then it failed to identify any specific creditor to whom the $800.00 payment referenced therein could be attributed.

In *Lanning*, Ms. Lanning testified that at the time she met with Counsel regarding a creditor's post-petition collection efforts, she and Counsel entered into a 75% contingency fee agreement because she could not afford his hourly rate. In addition, she testified she was paid pursuant to that agreement once the matter was settled.

However, no supplemental disclosure of compensation was filed in this case

MEMORANDUM OF DECISION - 28

identifying any new fee agreement between Counsel and his client or any payment

from any creditor.  The only supplements that were filed were those identifying the

payments completed by Ms. Lanning regarding the fees she had agreed to prior to

bankruptcy.  *See Lanning*, Doc. Nos. 2, 11, 14.

In *Sigmond*, Mr. Sigmond testified that he phoned Counsel after being

contacted by creditor Shell Oil but did not meet with Counsel in person.  Before

initiating the motion for sanctions against creditor, Mr. Sigmond and Counsel

agreed to split any recovery, with Counsel retaining 75% as a fee for his services.

The motion in this case was filed on July 21, 2004; thus, the record reflects that

Counsel entered into a new agreement with his clients on or before that date.

Counsel had fifteen days to file a supplemental 2016(b) disclosure, and he failed to

do so.

Mr. Sigmond further testified that he was paid pursuant to that agreement

once the settlement was reached.  Counsel withdrew the motion on August 25,

2004.  While the exact timing of the receipt of funds from the creditor is unknown,

it is clear that on or around August 25, Counsel received his $750.00 contingency

fee and no supplemental 2016(b) statement was filed.[25]

In the past, the Court has often reduced the fees of debtors' attorneys by

---

[25] Counsel's 2016(b) statement filed on April 21, 2005 was not only untimely, it was
inaccurate.  Counsel stated at hearing that his statement in this submission was in error as Citi
Group was not a creditor in the case and no payments were received from Citi Group.

MEMORANDUM OF DECISION - 29

10% for noncompliance with Rule 2016(b).  *See, e.g.*, *Combe Farms,* 01.1 I.B.C.R. at 9.  But a complete denial of compensation is also a permissible sanction in appropriate cases.  *See Law Offices of Nicholas A. Franke v. Tiffany* (*In re Lewis*), 113 F.3d 1040, 1045 (9th Cir. 1997); *In re Larson*, 04.1 I.B.C.R. 15, 16 (Bankr. D. Idaho 2004); *Combe Farms*, 01.1 I.B.C.R. at 9 n.9.

Here, based on Counsel's repeated failure to timely disclose any new agreements and/or payments received or the source of those payments, notwithstanding the Court's warnings regarding the necessity for such disclosures and the clear requirements under the Code and Rules, the Court concludes a 25% reduction in Counsel's fees is appropriate.  Therefore, applying that reduction to the reasonable amount of such fees, as determined above, Counsel will be allowed to retain the following amounts:

*Jones*: $656.25 (*i.e.*, 75% of $875.00);

*Motley*: $375.00 (*i.e.*, 75% of $500.00);

*Risner*: $300.00 (*i.e.*, 75% of $400.00);

*Lanning*: $262.50 (*i.e.*, 75% of $350.00); and

*Sigmond*: $187.50 (*i.e.*, 75% of $250.00).[26]

Counsel must give the excess funds to the Debtors.[27]

---

[26]  *See also* attached Ex. A at columns D and E.

[27]  The Court recognizes that under § 329(b)(2) any compensation that exceeds reasonable value for services rendered is to be returned to the entity that made the payments.

(continued...)

MEMORANDUM OF DECISION - 30

**CONCLUSION**

Counsel has not justified the fees charged and retained in the above captioned cases. The Court has evaluated Counsel's contingency fee, his itemizations, and the evidence presented at hearing and has determined a reasonable compensation amount in each case. However, due to Counsel's failure to comply with the Code and Rules, that amount must be further reduced. Therefore, Counsel will return the excess fees, identified in column F of Ex. A attached to this Decision, to his clients within 15 days of the orders being entered in these cases. He will further provide proof of those payments within such 15 days to the trustees in the cases and to the U.S. Trustee.

DATED:  July 26, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[27](...continued)
However, in these cases the creditors that provided the funds did so as a settlement with Counsel's *clients* for stay violations. The Court concludes any excess funds under § 329(b) may be properly returned to Debtors, and it has identified the amount of such refunds in column F of Ex. A which is attached to this Decision.

MEMORANDUM OF DECISION - 31

| | (A) Previously retained by Counsel | (B) Previously retained by Debtor(s) | (C) Reasonable compensation | (D) Reduction in fees for violations of Code and Rules | (E) Amount Counsel can retain | (F) Amount Counsel must return to Debtors |
|---|---|---|---|---|---|---|
| | -- | -- | -- | (C x 25%) | (C - D) | (A - E) |
| *Jones* | $1,000.00 | (relief from debt) | $875.00 | $218.75 | $656.25 | $343.75 |
| *Motley* | $600.00 | $200.00 | $500.00 | $125.00 | $375.00 | $225.00 |
| *Risner* | $900.00 | $300.00 | $400.00 | $100.00 | $300.00 | $600.00 |
| *Lanning* | $700.00 | $300.00 | $350.00 | $87.50 | $262.50 | $437.50 |
| *Sigmond* | $750.00 | $250.00 | $250.00 | $62.50 | $187.50 | $562.50 |

# Exhibit A

MEMORANDUM OF DECISION - 32

<u>CERTIFICATE RE: SERVICE</u>

A "notice of entry" of this Decision, Order and/or Judgment has been
served on Registered Participants as reflected by the Notice of Electronic Filing.
A copy of the Decision, Order and/or Judgment has also been provided to non-
registered participants by first class mail addressed to:

Henry L. Jones
Diane M. Jones
P.O. Box 425
New Plymouth, ID 83655

Rose Motley
230 E Bay Owl Drive
Kuna, ID 83634

Gary Risner
Maria Risner
P.O. Box 1124
Meridian, ID 83642

Sharon L. Lanning
7150 Rim Acres Lane
Boise, ID 83709

Sergio V. Sigmond
Elvira Z. Sigmond
1075 W. Egret Drive
Meridian, ID 83642

Case No. 04-04267-TLM (Henry L. Jones)
Case No. 04-03116-TLM (Rose Motley)
Case No. 04-02310-TLM (Gary Risner)
Case No. 04-03215-TLM (Sharon L. Lanning)
Case No. 04-01326-TLM (Sergio V. Sigmond)

Dated:  July 26, 2005

 /s/Jo Ann B. Canderan
Judicial Assistant to Chief Judge Myers

MEMORANDUM OF DECISION - 33